IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| MICROUNITY SYSTEMS ENGINEERING, INC., <br><br> Plaintiff, <br><br> V. <br><br> DELL, INC. AND INTEL CORPORATION, <br><br> Defendants. | Civil Action No. 2-04CV120-TJW |

### INTEL CORPORATION AND DELL, INC.'S RESPONSE TO MICROUNITY SYSTEMS ENGINEERING, INC.'S MOTION TO SUPPLEMENT PROTECTIVE ORDER

Intel Corporation and Dell, Inc. ("Intel/Dell") file this Response to MicroUnity Systems Engineering, Inc.'s ("MicroUnity's") Motion to Supplement Protective Order as follows:

### PRELIMINARY STATEMENT

After extensive negotiations to reach a mutually agreeable protective order, MicroUnity now seeks to renege on its bargain. Claiming that it seeks to "clarify" or "supplement," MicroUnity is actually requesting that the Court rewrite the previously agreed Protective Order in this lawsuit. The effect of rewriting the Protective Order as MicroUnity requests would be to permit its litigation counsel – who have access to Intel's and Dell's most sensitive and confidential technical information – to take part in the reexamination process for the ostensible purpose of convenience. However, such participation is precisely the activity that the Prosecution Bar in the Protective Order prohibits. This participation raises precisely the same danger that those with access to Intel's and Dell's confidential technical information would

use that technical information – even inadvertently – to distinguish prior art and provide guidance in drafting claims – even indirectly – in a way that they believe avoids prior art while potentially reading on Intel's and Dell's products. This is impermissible and would severely and irreparably prejudice Intel and Dell. MicroUnity's argument that the Prosecution Bar applies only to the PTO's original examination of applications and claims and not to reexamination is squarely at odds with the language of the Protective Order and common sense.

The absence of any burden on MicroUnity and significant risk to Intel is apparent in what MicroUnity fails to mention in its Motion. MicroUnity fails to mention that its reexamination counsel is the same counsel that originally prosecuted six of the seven reexamination patents. MicroUnity fails to mention that it is currently pursuing at least seventeen patent applications for related technology before the PTO. In fact, MicroUnity fails to mention that its reexamination counsel is the same counsel that is prosecuting many of these seventeen pending patent applications. These facts eviscerate any claim of convenience: if this counsel wasn't familiar with the prior art when prosecuting the applications for the reexamination patents, it should be familiar with the prior art in prosecuting the seventeen pending applications. These facts also magnify the risk to Intel/Dell: it is inconceivable that MicroUnity's prosecution counsel should be permitted to gain access to Intel's and Dell's most sensitive information while they are in the midst of rewriting the MicroUnity patents under reexamination and prosecuting additional patents for MicroUnity. The convenience MicroUnity claims, if any, is insufficient to overcome the risk of substantial prejudice to Intel and Dell.

A deal is a deal. The parties negotiated and agreed to the terms of the Protective Order, including the Prosecution Bar, and MicroUnity should be held to its agreement. MicroUnity should not be permitted to renege on its agreement after Intel has produced millions

of pages of highly confidential, sensitive documents. MicroUnity's request to rewrite the Protective Order should be denied.

## BACKGROUND

Now seven of the eight patents-in-suit are being reexamined by the PTO because the PTO has determined that there is a substantial question of patentability and has rejected many of MicroUnity's claims. *See, e.g.*, Inter Partes Reexamination Communication re '765 Patent (June 1, 2005) (rejecting thirty of MicroUnity's claims with respect to the '765 patent) (attached as Exhibit A); *see also* 35 U.S.C. § 312(a); 37 C.F.R. § 1.931(a). The patents now in reexamination are the '061, '060, '321, '482, '765, '840, and '096 patents.[1] *See* Exhibit B (cover pages for the patents currently in reexamination). MicroUnity's prosecution counsel for each of these patents was McDermott, Will & Emery, the same counsel that is now representing MicroUnity in the reexamination process. *See id.*; Request for Extension of Time Under 37 C.F.R. § 1.956 (attached as Exhibit C).

The Protective Order in this lawsuit describes two categories of information, "Confidential Information" and "Counsel Eyes Only Confidential Information." Protective Order §§ 6, 18. "Counsel Eyes Only Confidential Information" is defined as "proprietary financial or technical or commercially sensitive competitive information" and specifically includes strategic plans, microarchitecture specifications ("MASs"), detailed electronic design information ("RTL"), and "technical documents that would reveal trade secrets." *Id.* § 18. Those who receive this information are subject to a Prosecution Bar, which provides that they "shall not prosecute or prepare any patent application." *Id.* § 14. This prohibition includes

---

[1] The PTO granted reexamination of the '096 patent on August 1, 2005.

"substantive involvement in the prosecution of any applications filed, or claiming priority from any application filed." *Id.*

Despite this prohibition, MicroUnity wishes litigation counsel to take part in the reexamination process "limited to providing insight and explanation of the prior art record." Motion, at 10. Although MicroUnity has asserted that "Intel has declined to participate" in clarifying the Protective Order (Motion, at 3), the parties have in fact conferred in good faith about the extent of the Protective Order and the limitations it places on the use of litigation counsel in the reexamination process. Intel/Dell, however, disagree with MicroUnity's characterization that a "clarification" of or "supplement" to the Protective Order is either necessary or appropriate for the reasons stated below.

## ARGUMENT & AUTHORITIES

### I. "Providing Insight and Explanation" of the Scope and Content of Prior Art Would Constitute Substantial Involvement in the Reexamination Process.

MicroUnity describes the reexamination procedure as a three-part process while at the same time claiming that litigation counsel's role in one third of this process would not be "substantial." Motion, at 6, 9. This proposed role for MicroUnity's litigation counsel – providing "insight and explanation of prior art" – however characterized, cannot be divorced from the purportedly discrete task of amending claims and drafting new ones. MicroUnity's attempt to compartmentalize the reexamination process is untenable because the way the prior art is distinguished inevitably influences and controls the way claims are amended or supplemented. There may be several ways that MicroUnity may seek to distinguish prior art and litigation counsel with access to Intel's and Dell's confidential information will inevitably do so in a way that they believe preserves litigation options with respect to Intel's and Dell's products. Indeed, even in the highly unlikely event that no claims are amended or supplemented, MicroUnity will

seek to characterize the prior art in a way that does not disclaim coverage of Intel and Dell's products. Intel/Dell do not believe that MicroUnity can do so – the prior art of record in the reexamination clearly invalidates those claims – but that is not the point. The Prosecution Bar was designed to prevent that very risk.

If the Prosecution Bar were lifted with respect to reexamination, all good intentions notwithstanding, MicroUnity's litigation counsel would be in the untenable position of distinguishing prior art in a manner that will take advantage of what they know about Intel's and Dell's products and will inexorably influence the way the reexaminations are prosecuted. *See Motorola, Inc. v. Interdigital Tech. Corp.*, No. Civ. A. 93-488-LON, 1994 WL 16189689, at *5 (D. Del. Dec. 19, 1994) (questioning the ability of litigation counsel to separate information learned from confidential documents from his own ideas with respect to prosecuting patents related to litigation). The attempt to parcel out the reexamination process into facets where objectivity is optional is unworkable. This is why the parties agreed to the Prosecution Bar in the Protective Order in the first place.

## II. The Parties Agreed to the Protective Order to Prevent the Participation of Litigation Counsel in the Activity That MicroUnity Now Proposes.

MicroUnity's claim that the reexamination process is not within the scope of "applications" as used in the Protective Order (Motion, at 9), is without merit as it ignores the terms of the Protective Order and the reexamination process itself. The parties agreed to the Prosecution Bar for the precise issue that is now before the Court: to prevent the use of the confidential information of one side in participating in the prosecution of the other side's patents, including but not limited to the drafting of patent claims. The Prosecution Bar provides that litigation counsel "shall not prosecute or prepare any patent application." Protective Order § 14. This prohibition includes "substantive involvement in the prosecution of any applications filed,

or claiming priority from any application filed." *Id.* MicroUnity's attempt to parse the meaning of the term "application" flies in the face of the spirit and letter of the Protective Order, and of the examination and reexamination procedure.

The reexamination process affords the patent owner the opportunity to add or amend claims. *See* 35 U.S.C. § 314(b). To that end, the rules for the reexamination process are largely the same as those for examination of an original patent application. *See, e.g.*, 37 C.F.R. § 1.104(a) (providing, *inter alia*, that "[t]he examination shall be complete with respect to both compliance of the application or patent under reexamination with the applicable rules and to the patentability of the invention as claimed, as well as with respect to matters of form, unless otherwise indicated"). There is no difference in the review and approval of patent claims whether it is done with respect to an original patent application or with respect to amending or adding new claims during reexamination. Even with its strained reading of the Protective Order, MicroUnity has made no valid argument for artificially creating a difference between patent examination and reexamination.

### III. The Risk to Intel Outweighs the Burden to MicroUnity.

#### A. MicroUnity's Reexamination Counsel Should Already be Familiar With the Prior Art at Issue.

The relief MicroUnity seeks would place its litigation counsel in a position to contribute to amending and adding new claims (with knowledge of Intel's confidential information) while depriving Intel/Dell of the protection the parties agreed to under the Protective Order. MicroUnity's basis for modifying the Protective Order and exposing Intel and Dell to the risks described above is purportedly one of convenience. MicroUnity argues that to "retain and re-educate additional counsel" on the prior art at issue "would be inefficient, wasteful, and result in duplicative effort." Motion, at 8. MicroUnity, however, has already

retained separate reexamination counsel and, by its own suggestion, will employ that counsel for the bulk of the reexamination procedure. *Id.* at 6-7. MicroUnity's reexamination counsel will still have to study all of the prior art in connection with amending claims and proposing new ones – an activity in which MicroUnity itself has conceded its litigation counsel should not be involved.

Moreover, as the Court is aware, MicroUnity has already asked the Patent Office to delay the reexamination of the '765 Patent. In two separate requests, MicroUnity requested a total of a three-month extension of time to respond to the PTO's rejection of the '765 patent. In response, the PTO granted a two-month extension. *See* Decision on Request Under 37 C.F.R. § 1.956 for Extension of Time, at 2 (attached as Exhibit D). Denial of MicroUnity's Motion here will put it in the exact same position as every other patent owner when a reexamination has been ordered: MicroUnity will have to rely on reexamination counsel to review prior art and draft new and amended claims for the PTO to consider. There is no reason to permit MicroUnity to employ counsel with knowledge of Intel's most confidential information to take part in this process.

In reality, however, MicroUnity's reexamination counsel is in a better position to "efficiently" address prior art than are most others whose patents are subject to reexamination. MicroUnity's reexamination counsel prosecuted six of the seven patents now in reexamination. Ex. B (cover sheets of the patents under reexamination identifying prosecution counsel of record). Given that the law imposes a duty of candor and encourages careful examination of prior art, the "education" of MicroUnity's reexamination counsel should be non-existent or, at most, insignificant. *See* 37 C.F.R. § 1.56; *Kemin Foods, L.C. v. Pigmentos Vegetables del Centro S.A. de C.V.*, 357 F. Supp. 2d 1105, 1114 (S.D. Iowa 2005). MicroUnity's reexamination

counsel not only originally prosecuted six of the seven patents now being reexamined, this same counsel also represents MicroUnity with respect to many of MicroUnity's seventeen pending patent applications. These seventeen patent applications have claims similar to those being reexamined and the art in the reexamination has been cited in many of those applications. MicroUnity's reexamination counsel already are – or should be – familiar with this prior art. Thus, there should be almost no "duplicative" effort. The near complete absence of any duplicative effort, however, pales in comparison to the substantial risk to Intel/Dell.

### B. Intel is Put at Tremendous Risk by the Possibility of Inadvertent Disclosure of Confidential Information in Relation to Amending MicroUnity's Patents or the Issuance of New Patents.

The risk to Intel and Dell of granting the relief MicroUnity requests is significant: the reexamination process could result in the amendment of the claims in a manner that reads on Intel's and Dell's products. This risk to Intel/Dell is even more acute given that MicroUnity's reexamination counsel is also currently prosecuting many of MicroUnity's seventeen patent applications that relate to similar technology. Clearly, the risk to Intel/Dell is significant and the damage potentially irreparable, regardless of the stated (and presumed) intent to adhere to the strictest ethical standards. This is the precise concern courts have articulated when addressing the problem of *inadvertent* disclosures. *See Motorola*, 1994 WL 16189689, at *4-5 ("The issue is not deliberate disclosure, however, but inadvertent disclosure." (emphasis in original)). Through inadvertent disclosure, there is a real danger of prior art being characterized or claims being amended, supplemented, or newly drafted altogether based upon knowledge of Intel's or Dell's highly confidential and sensitive information. The burden on MicroUnity is *de minimis*; it places it in a position of using its patent prosecution counsel to address prior art this counsel should have been aware of and presented to the PTO when these patents were originally

prosecuted or, at a minimum, should be aware of in relation to the prosecution of MicroUnity's pending patent applications.

## CONCLUSION

The Protective Order does not need to be "clarified" or "supplemented." The restrictions in the Protective Order exist for the same reasons that are implicated by MicroUnity's request to permit litigation counsel to take part in the reexamination process. For these reasons, Intel/Dell request that the Court deny MicroUnity's Motion to Clarify or Supplement Protective Order and provide to Intel/Dell all other relief to which they are entitled.

Dated: August 1, 2005                                   Respectfully submitted,


/s/ David Healey
David J. Healey
Attorney-In-Charge
State Bar No. 09327980
WEIL GOTSHAL & MANGES, LLP
700 Louisiana, Suite 1600
Houston, Texas 77002
713-546-5000 (Telephone)
713-224-9511 (Facsimile)
david.healey@weil.com

Matthew D. Powers
Steven S. Cherensky
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
650-802-3000 (Telephone)
650-802-3100 (Facsimile)

ATTORNEYS FOR DEFENDANTS
DELL INC. AND INTEL CORPORATION

## CERTIFICATE OF SERVICE

      This is to certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 1st day of August, 2005. Any other counsel of record will be served by first class mail.

                                      /s/ Alison Chen
                                      Alison Chen